IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CARL LEE GREEN                                                           PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 1:09cv638-HSO-JMR

CITY OF MOSS POINT, MISSISSIPPI, a Municipal
Corporation, and OFFICER BARRY CLARK                            DEFENDANTS

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is the Motion for Partial Summary Judgment [20] on Qualified Immunity Grounds filed by Defendant Barry Clark ["Officer Clark"]. Officer Clark has also filed a supporting Memorandum [21]. Plaintiff Carl Lee Green ["Plaintiff"] has filed a Response [23], a Supplemental Response [27], and a Memorandum in Opposition [28]. After consideration of the Motion, the pleadings, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that the Motion should be granted in part and denied in part.

### I. BACKGROUND

A.  Procedural History

Plaintiff filed his Complaint on August 21, 2009, against Defendants City of Moss Point, Mississippi [the "City"], and Officer Clark, in his individual capacity. *See* Compl. Plaintiff's claims stem from alleged injuries he suffered as the result of an incident involving Plaintiff and the Moss Point Police Department, including Officer Clark. *See* Compl., at pp. 2-3. Plaintiff alleges that, after being pursued by

local law enforcement, he was injured when Officer Clark fired his service weapon into the windows of Plaintiff's vehicle, striking him in the arm, chest, and neck. *See id.*

The Complaint asserts claims against both Defendants for deprivation of Plaintiff's legal rights pursuant to 42 U.S.C. § 1983 and excessive use of force. Compl., at pp. 3-7. Plaintiff also advances claims against the City of Moss Point for failure to adequately train and supervise officers, negligent hiring, retention, and failure to discipline or take necessary corrective action, *id.* at pp. 5-7, and claims against Officer Clark under state law for battery, assault, and intentional infliction of emotional distress, *id.* at pp. 7-8. Officer Clark now seeks dismissal of all claims against him, on grounds that he is entitled to qualified immunity.

B.  Relevant Factual Background

In considering Plaintiff's § 1983 claim against Officer Clark, the first step in assessing the constitutionality of Officer Clark's actions is to determine the relevant facts. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). At the summary judgment stage, the Court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *See id.* at 378. As the Supreme Court has noted, in qualified immunity cases, this usually means adopting the plaintiff's version of those facts which are in dispute, as the Court will in this case. *See id.*

The undisputed material facts, along with relevant disputed material facts construed in a light most favorable to Plaintiff, establish that on or about March 19,

2008, Plaintiff was driving his Ford Bronco in Moss Point, Mississippi, with an improper license tag and an expired drivers license, when he came to a stop sign at a four-way intersection. Dep. of Lee Green, at pp. 25-26, 33-34, attached as Ex. "A" to Pl.'s Supp. Resp. While Plaintiff was stopped, a Moss Point police officer pulled up to the intersection. *Id.* at p. 26. Rather than proceeding straight ahead as he had intended, Plaintiff turned in the opposite direction the officer was facing, in an attempt to prevent the officer from seeing his improper license tag. *Id.* at pp. 26, 33-35. However, the police officer turned around. When Plaintiff saw this, he tried to elude or "lose" the police officer by making multiple turns. *Id.* at pp. 27, 34-35. Plaintiff acknowledges that, at some point, he accelerated in an attempt to evade the officer. *Id.* at p. 35.

According to Plaintiff, the police pursued him for about 3 miles along city streets, during which time Plaintiff's vehicle reached speeds in excess of the speed limit, and up to around 70 miles per hour. Plaintiff contends that he never exceeded 80 miles per hour. Dep. of Lee Green, at pp. 28, 38-40, attached as Ex. "A" to Pl.'s Supp. Resp. Plaintiff only saw one or two other vehicles on the streets during the chase, all of which were traveling in the opposite direction. Plaintiff maintains that he did not force any vehicles off the road, *id.* at pp. 36-37, nor did he pass any during the pursuit, *id.* at p. 37.

At some point, Plaintiff noticed that there were multiple police cars pursuing him, including those of Officer Clark and Officer Chad Martin. The police vehicles were utilizing their lights and sirens. Dep. of Lee Green, at pp. 27-28, 40, attached

as Ex. "A" to Pl.'s Supp. Resp.; Dep. of Officer Chad Martin, at p. 17, attached as Ex. "B" to Pl.'s Supp. Resp. Plaintiff admits that he continued his efforts to evade the officers. *See* Dep. of Lee Green, at p. 56, attached as Ex. "A" to Pl.'s Supp. Resp. Eventually, Plaintiff pulled into an empty parking lot, where Officers Clark and Martin maneuvered their vehicles to at least partially block the only exit. *See id.* at pp. 28, 45; Dep. of Officer Barry Clark, at pp. 26-31, attached as Ex. "C" to Clark's Mot. for Partial Summ. J. Officer Clark explained that he "made a turn to cut [Plaintiff] off." Dep. of Officer Barry Clark, at p. 29, attached as Ex. "C" to Clark's Mot. for Partial Summ. J. According to Plaintiff, Officer Clark pulled in front of him, and as Plaintiff "slammed on the brakes," his truck slid on gravel in the parking lot, accidentally hitting Officer Clark's car. Dep. of Lee Green, at pp. 28, 39-40, 55, attached as Ex. "A" to Pl.'s Supp. Resp.

The front end of Plaintiff's vehicle impacted the passenger's side front door of Officer Clark's car. *Id.* at pp. 30, 45-46. As a result, Plaintiff maintains that his truck rolled backward and "went dead." *Id.* at pp. 28, 40-41. Plaintiff contends that, as he sat in his truck, Officer Clark immediately exited and ran behind his police cruiser with his weapon drawn, and began firing multiple shots at Plaintiff. *See id.* at pp. 28, 40, 47-48. Officer Clark was approximately ten to fifteen feet from Plaintiff when he began firing. *See id.* at pp. 48, 50.[1] After "glass started flying"

---

[1] The Court recognizes that Plaintiff's sworn testimony differs in several material respects from that of Officer Clark, particularly with regard to the collision and the timing of the gun shots. Thus, the Court is presented with disputes of fact and an issue of credibility, which are determinations for a jury and inappropriate for resolution at the summary judgment stage. *See Sanchez v. Fraley*, 2010 WL 1752123, *5 (5th Cir. April 30, 2010).

from the shots, Plaintiff claims he then cranked his vehicle and attempted to drive out of the parking lot. *See id.* at pp. 29, 46, 50.

Plaintiff testified in his deposition that Officer Clark shot at him ten or fifteen times, and struck him with three of those shots. *See* Dep. of Lee Green, at pp. 12-13, attached as Ex. "A" to Pl.'s Supp. Resp. Officer Clark acknowledges that he fired at Plaintiff's rear tire three times, and into the cab of Plaintiff's vehicle four times, striking Plaintiff twice and possibly grazing Plaintiff once. *See* Dep. of Officer Barry Clark, at pp. 35-39, 41-42, 44, 46, 48-50, 57-58, 69, attached as Ex. "C" to Clark's Mot. for Partial Summ. J. Plaintiff was shot in the shoulder and arm. *See* Dep. of Officer Barry Clark, at pp. 35, 41-42, 69, attached as Ex. "C" to Clark's Mot. for Partial Summ. J.; Dep. of Lee Green, at pp. 18-20, attached as Ex. "A" to Pl.'s Supp. Resp.[2] It is undisputed that no one other than Plaintiff and Officers Clark and Green were present in the parking lot at the time of the collision and shooting. *See* Dep. of Officer Chad Martin, at p. 39, attached as Ex. "B" to Pl.'s Supp. Resp.

According to Officer Martin, the front of Plaintiff's vehicle impacted the side portion of Officer Clark's vehicle, at which point Plaintiff's vehicle stalled. Dep. of Officer Chad Martin, at pp. 20-21, attached as Ex. "B" to Pl.'s Supp. Resp. Both officers exited their vehicles, drew their weapons, and told Plaintiff "to show [them] his hands and exit the vehicle in a loud audible tone...." *Id.* at p. 21. Officer Martin testified that Plaintiff then "threw it in reverse," and Officer Martin returned to his

---

[2] Plaintiff alleged in his Complaint that he was shot in the arm, chest, and neck. *See* Compl., at pp. 2-3. It is clear from the testimony submitted in support of and opposition to the pending Motion that Plaintiff was at least shot in the shoulder and arm.

-5-

own vehicle. *Id.* He testified that he heard shots fired, which caused him to turn around and look back. According to Officer Martin's testimony, Officer Clark's "life was not in jeopardy" at that point. *Id.* at pp. 21, 40. Plaintiff then exited the parking lot in his vehicle. Plaintiff testified that he "tried to get away" after Officer Clark shot him, but he could not "get fast on that because it had a flat tire," as the result of Officer Clark having shot his tire. Dep. of Lee Green, at p. 35, attached as Ex. "A" to Pl.'s Supp. Resp. Officer Martin resumed the vehicle pursuit and captured Plaintiff when he eventually surrendered. *See* Dep. of Officer Chad Martin, at pp. 28-29, attached as Ex. "B" to Pl.'s Supp. Resp.

Plaintiff was eventually charged with felony eluding and aggravated assault on a police officer. Dep. of Lee Green, at p. 9, attached as Ex. "A" to Pl.'s Supp. Resp. According to Plaintiff, the felony eluding charge was dropped, and the charge of aggravated assault on a police officer was reduced to attempted assault on a police officer. *See id.* at pp. 9-10. Based upon the record before the Court, it appears that this charge has not been resolved, and remains pending. *See id.* at pp. 8-11.

## II. DISCUSSION

A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. The purpose of summary judgment is to

isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *See id.* at 543 (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial."  *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, a plaintiff must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Booth*, 75 F. Supp. 2d at 543.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *See Booth,* 75 F. Supp. 2d at 543.

B.  Qualified Immunity and Plaintiff's § 1983 Claims against Officer Clark

42 U.S.C. § 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). A plaintiff cannot succeed on a § 1983 claim merely by showing any deprivation of his rights; § 1983 was intended to preserve rights protected by federal law. *Wright v. Collins*, 766 F.2d 841, 849 (5th Cir. 1985).

"Qualified immunity balances two important interests– the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, - - U.S - - , 129 S. Ct. 808, 815 (2009). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (*citing Bazan ex. rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). This burden cannot be discharged by conclusory allegations and assertions. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

The qualified immunity analysis involves a two step inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 129 S. Ct. at 808. "[W]hether an

official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citations omitted). A defendant will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant's actions were lawful; but if officers of reasonable competence could disagree on the issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It is within the discretion of the district court to decide which of the two prongs of the qualified immunity analysis to address first in light of the circumstances of each case. *Pearson*, 129 S. Ct. at 818.

1. Plaintiff's Clearly Established Constitutional Rights

The Court first considers whether, taken in the light most favorable to Plaintiff, the facts alleged state the violation of a clearly established constitutional right. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). In this case, the core of Plaintiff's § 1983 claim against Officer Clark is that he employed excessive force by shooting Plaintiff, resulting in an unreasonable seizure under the Fourth Amendment. *See* Compl., *passim*; Dep. of Lee Green, at pp. 59-60, attached as Ex. "A" to Pl.'s Supp. Resp.

"'[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied.'" *Scott*, 550 U.S. at 381 (*quoting Brower v. County of Inyo*, 489 U.S. 593, 596-597 (1989)).

"[C]laims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." *Graham v. Connor*, 490 U.S. 386, 395 (1989). To plead a § 1983 excessive force claim, "the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008). Thus, at the time of this incident, there existed a clearly established constitutional right to be free from the use of excessive force.

The gunshot wounds sustained by Plaintiff in this case present a legally cognizable "injury." Based upon the facts as the Court must construe them at this stage of the proceedings, at the time Officer Clark began firing into the cab of Plaintiff's vehicle, its engine was not running. *See* Dep. of Lee Green, at pp. 28, 40, 47-48, 50, attached as Ex. "A" to Pl.'s Supp. Resp. According to Plaintiff's testimony, Officer Clark fired on him while he was sitting inside of his vehicle, with no engine running, and while he was not posing a threat to anyone. According to Officer Martin, Clark's life was not in jeopardy at that point. Dep. of Officer Chad Martin, at pp. 21, 40, attached as Ex. "B" to Pl.'s Supp. Resp. Thus, Plaintiff has alleged injuries, resulting directly and solely from force that was excessive to the need, such that Plaintiff has properly stated the violation of a constitutional right which was clearly established at the time of the events in question.

2. <u>Objective Reasonableness of Officer Clark's Actions</u>

The next step of the immunity inquiry the Court will consider is whether Officer Clark's use of force was objectively unreasonable in light of clearly established law at the time the challenged conduct occurred. *See Bush,* 513 F.3d at 501. The Court must determine whether the right to be free from the degree of force employed in this particular situation would have been clear to an officer at the scene, using an "on-scene perspective," rather than the "20/20 vision of hindsight." *See id.*

To evaluate the reasonableness of the manner in which a seizure is effected, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. *See Scott*, 550 U.S. at 383 (*quoting United States v. Place*, 462 U.S. 696, 703 (1983)). "The inquiry into reasonableness asks whether the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) (internal quotations omitted). The Fifth Circuit has explained that, "[i]f reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Id.*

Officer Clark defends his actions by pointing to the need to ensure public safety, and to concern for his own and his partner's safety during this incident. Thus, in assessing whether Officer Clark's actions were reasonable, the Court must consider the risk of bodily harm that Officer Clark's actions posed to Plaintiff, in

light of the threat that Officer Clark was trying to eliminate. *See Scott*, 550 U.S. at 383.

The Supreme Court has stated that, in weighing the perhaps lesser probability of injuring or killing numerous bystanders against a larger probability of injuring or killing a single person, a court must take into account not only the number of lives at risk, but also their relative culpability. *Scott*, 550 U.S. at 384. "It was [Plaintiff], after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that [Officer Clark] confronted." *Id*.

Officer Clark asserts that Plaintiff posed an immediate threat to his safety, Officer Martin's safety, and the general public's safety. It is undisputed that two police cars, with lights flashing and sirens blaring, pursued Plaintiff for several miles, at speeds reaching 70 to 80 miles per hour along city streets, before Plaintiff stopped in the parking lot. "By contrast, those who might have been harmed had [Officer Clark] not taken the action he did were entirely innocent." *Scott*, 550 U.S. at 384.

However, accepting Plaintiff's account of the events as true, as the Court must, at the time Officer Clark actually began firing into the cab of Plaintiff's truck, its engine was dead or not running. *See* Dep. of Lee Green, at pp. 28, 40, 47-48, 50, attached as Ex. "A" to Pl.'s Supp. Resp. It is undisputed that this shooting occurred in an empty parking lot, where no other vehicles or citizens were present. *See* Dep. of Officer Chad Martin, at pp. 36, 39-40, attached as Ex. "B" to Pl.'s Supp. Resp. It

was only after "glass started flying," from Officer Clark's shots into the cab of the truck, that Plaintiff cranked the engine and fled out of the parking lot. *See* Dep. of Lee Green, at pp. 29, 46, 50, attached as Ex. "A" to Pl.'s Supp. Resp. Though the Fourth Amendment's reasonableness test is "not capable of precise definition of mechanical application," *Bush*, 513 F.3d at 502 (internal quotation omitted), resolving all factual disputes in Plaintiff's favor, a reasonable officer should have known not to fire into the cab of a stalled truck at a driver, who was not posing an immediate threat to anyone at the time.

In response to Officer Clark's Motion, Plaintiff has produced sufficient evidence of a violation of his clearly established constitutional rights of which a reasonable officer would have been aware, to overcome qualified immunity. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007). Summary judgment would therefore be inappropriate on Plaintiff's individual capacity excessive force claim against Defendant Clark. *See id.*

C.  Plaintiff's State Law Claims against Officer Clark

Plaintiff asserts state law claims against Officer Clark for battery, assault, and intentional infliction of emotional distress. Compl., at pp. 7-8.

> Through the Mississippi Tort Claims Act (MTCA), the [Mississippi] Legislature has provided that, as a matter of public policy, the state and its political subdivisions are immune from tortious acts or omissions by its employees while they are acting within the course and scope of their employment. MISS. CODE ANN. § 11-46-7(1) (Rev.2002); [*Phillips v. Miss. Dep't of Pub. Safety*, 978 So.2d 656, 660 (Miss.2008)]. However, the Legislature saw fit to carve out certain exceptions to the general rule of sovereign immunity.

*City of Laurel v. Williams*, 21 So. 3d 1170, 1173 (Miss. 2009).

"The MTCA provides the exclusive remedy for tort actions brought against a governmental entity or its employees." *Mississippi Department of Public Safety v. Durn*, 861 So. 2d 990, 994 (Miss. 2003) (*citing* MISS. CODE ANN. § 11-46-7(1)). Cases brought under the MTCA are tried without a jury. MISS. CODE ANN. § 11-46-13(1). The Mississippi Supreme Court has explained that, "[a]lthough the MTCA waives sovereign immunity for tort actions, it also prescribes certain exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity," such as those pursuant to MISS. CODE ANN. § 11-46-9(1)(c). *Id.* Immunity afforded by the MTCA is a question of law properly addressed by summary judgment. *See Chapman v. City of Quitman*, 954 So. 2d 468, 473 (Miss. Ct. App. 2007); *see also Mississippi Department of Public Safety v. Durn*, 861 So. 2d 990, 994 (Miss. 2003).

Officer Clark submits that to the extent Plaintiff has alleged state law tort claims against him, those claims are barred by MISS. CODE ANN. § 11-46-9(1)(c).[3] *See* Clark's Mot. for Partial Summ. J., at p. 7. This section reads as follows:

(1)  A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

                                                 \*   \*   \*

(c)  Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of

---

[3] Officer Clark cites MISS. CODE ANN. § 11-46-9(c), but it is clear from a plain reading of his Motion, and of Plaintiff's Supplemental Response, that the subsection to which Officer Clark is referring is MISS. CODE ANN. § 11-46-9(1)(c).

> the safety and well-being of any person not engaged in criminal activity at the time of injury....

MISS. CODE ANN. § 11-46-9(1)(c).

The parties do not dispute that Officer Clark was in the course and scope of his employment when he shot Plaintiff. *See* Clark's Mem. in Supp. of Mot., at p. 14; Pl.'s Supp. Resp., at p. 9. Plaintiff contends that questions of material fact exist as to whether Officer Clark acted in reckless disregard of Plaintiff's rights, and maintains that Plaintiff was not engaged in criminal activity at the time of injury, such that this exclusion does not apply. *See* Pl.'s Supp. Resp. [27], at pp. 4-5; *see also* MISS. CODE ANN. § 11-46-9(1)(c).

1. <u>Reckless Disregard</u>

Under the Mississippi Tort Claims Act, "the plaintiff has the burden of proving 'reckless disregard' by a preponderance of the evidence." *Titus v. Williams*, 844 So. 2d 459, 468 (Miss. 2003) (*citing Simpson v. City of Pickens*, 761 So. 2d 855, 859 (Miss. 2000)). "Reckless disregard is 'a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (Miss. 2009) (*quoting Phillips v. Miss. Dep't of Pub. Safety*, 978 So. 2d 656, 661 (Miss. 2008)). The Court need not resolve whether Officer Clark acted in reckless disregard for Plaintiff's safety and well being, however, since Officer Clark is afforded immunity under the MTCA because Plaintiff was clearly engaged in "criminal activity" at the time of injury. *See* MISS. CODE ANN. § 11-46-9(1)(c).

2. Criminal Activity

Officer Clark maintains that "Plaintiff was engaging in criminal activity at the time of the incident." Clark's Mem. in Supp. of Mot., at p. 15. He provides a Grand Jury report stating that the evidence "supported a charge against Lee Carl Green and that the officer involved acted appropriately under the law." *See* Grand Jury Report, attached as Ex. "F" to Clark's Mem. in Supp. of Mot. However, the charge is not stated. Plaintiff testified that he was charged with felony eluding and aggravated assault on a police officer. Dep. of Lee Green, at p. 9, attached as Ex. "A" to Pl.'s Supp. Resp. He states that the felony eluding charge was dropped, and that the charge of aggravated assault on a police officer was reduced to attempted assault on a police officer. *See id.* at pp. 9-10. However, Plaintiff maintains that, at the time he was shot, his vehicle was stopped and he wanted to surrender, such that he was not then breaking the law. *See* Suppl. Resp., at p. 9.

The Mississippi Supreme Court has explained that

[t]he MTCA's police exemption "is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." [*City of Jackson v. Perry*, 764 So. 2d 373, 379 (Miss. 2000).] If the victim is engaged in an illegal activity that is a cause of the harm, the government is immune from liability. *Williams v. City of Jackson*, 844 So. 2d 1161, 1164 (Miss. 2003). It must be shown that the victim was engaged in criminal activity that has a causal nexus to the wrongdoing of the tortfeasor. *Perry*, 764 So. 2d at 379. "Where an officer has probable cause to arrest and proceeds to do so, there is the requisite nexus between criminal activity and the action causing injury." *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001). The criminal activity supporting the exemption must be more than fortuitous, but it applies to misdemeanors as well as felonies. *Id.* Misdemeanor traffic offenses are criminal activities within the statute. *Perry*, 764 So. 2d at 373.

*Mississippi Department of Public Safety v. Durn*, 861 So. 2d 990, 997 (Miss. 2003).

Plaintiff admits that he was driving on a suspended driver's license with no proper license tag on his vehicle, which led to the pursuit. *See* Dep. of Lee Green, at p. 56, attached as Ex. "A" to Pl.'s Supp. Resp. Even after he was shot, he continued trying to elude Officer Martin, who finally apprehended him. Plaintiff's testimony clearly reflects that he was speeding and evading police, as Officers Clark and Martin pursued him. *See, e.g.,* Dep. of Lee Green, at pp. 27-28, 34-35, 38-40, attached as Ex. "A" to Pl.'s Supp. Resp. He further admits that, at a minimum, he was charged with attempted assault on a police officer arising out of this incident. Thus, it cannot be seriously disputed that Plaintiff was engaged in criminal activity at the time of this incident. There is a clear nexus between Plaintiff's criminal activity and the injury suffered by him, as his criminal activity is what caused the police, including Officer Clark, to initially give chase. *See Durn*, 861 So. 2d at 997. Accordingly, Officer Clark is exempted from liability, and entitled to summary judgment, on Plaintiff's state law tort claims against him. *See* MISS. CODE ANN. § 11-46-9(1)(c).

III. CONCLUSION

Based on the foregoing, genuine issues of material fact preclude qualified immunity in favor of Officer Clark on Plaintiff's individual capacity § 1983 claim against him. However, Officer Clark has demonstrated that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law with respect to Plaintiff's state law tort claims against him, because Officer Clark is

exempt from liability under the MTCA.  *See* MISS. CODE ANN. § 11-46-9(1)(c); *see* FED. R. CIV. P. 56.  Officer Clark's Motion should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, Defendant Barry Clark's Motion for Partial Summary Judgment [20], should be and hereby is **GRANTED IN PART** as to Plaintiff's state law tort claims against Officer Clark, and **DENIED IN PART** as to Plaintiff's 42 U.S.C. § 1983 excessive force claim against Officer Clark.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated herein, Plaintiff's state law claims against Officer Clark, including the claims for battery, assault, and intentional infliction of emotional distress, should be and hereby are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 13th day of September, 2010.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE